UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REGIONAL REDEVELOPMENT LLC,<br><br>　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES STEEL CORPORATION,<br><br>　　Defendant. | Case No. 2:23-CV-402-GSL-JEM |

## OPINION AND ORDER

Plaintiff brought promissory estoppel and unjust enrichment claims against Defendant after a failed land sale, and as evidence, attached two of the three contracts Plaintiff and Defendant entered during negotiations. [DE 7]. When answering Plaintiff's complaint, Defendant attached the third contract Plaintiff and Defendant entered during negotiations, which Defendant alleged controlled Plaintiff's claims. [DE 9-1]. Defendant then moved for Judgment on the Pleadings. [DE 15]. In response to Defendant's motion, Plaintiff argued first that there is no contract governing the events at issue, and alternatively, even if there is a contract, it is unenforceable due to public policy. [DE 22]. For the reasons below, Defendant's Motion for Judgment on the Pleadings [DE 15] is GRANTED.

## BACKGROUND

Defendant, a corporation, owns land in Gary, Indiana, which formerly housed a manufacturing plant. [DE 7, Page 2]. Plaintiff was interested in this land and was formed as an LLC for the purpose of: (i) purchasing the land from Defendant and demolishing the manufacturing plant; (ii) preparing and submitting an application to the Indiana Department of Environmental Management ("IDEM") for the operation of a "construction and demolition

debris non-municipal solid waste landfill;" and (iii) marketing and selling the land, along with the fully permitted and functioning landfill, to a third-party. *Id.* In late 2019, Defendant entered negotiations to sell Plaintiff the land, which included the preparation and submission of a landfill application to the IDEM. *Id.* These discussions culminated in the execution of the Option Agreement and the Memorandum of Option Agreement, both of which Plaintiff attached to the complaint. *Id.*

While working with IDEM on their application, Plaintiff discovered that Defendant already held the necessary permit to operate a small-scale landfill. [DE 7, Page 2-3]. This permit, however, would require major modification to convert the small-scale landfill to the large-scale, non-municipal landfill that was contemplated by the parties. [DE 7, Page 2-3]. In reliance on the "written and oral representations" of Defendant, Plaintiff spent "capital, political capital, and manpower" to complete the landfill modification application for submission to IDEM. [DE 7, Page 3]. As Plaintiff made progress, Defendant began to shift its position regarding the landfill and Plaintiff's role in its development and future sale. *Id.* Before the breakdown in communication, Plaintiff "proved" to Defendant that IDEM would approve the modification to its existing permit, thus allowing the large-scale landfill Plaintiff promised Defendant it could deliver. *Id.* Thereafter, Defendant stopped responding to Plaintiff entirely and the land sale never occurred. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R.

Civ. P. 10(c)). The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312-313 (7th Cir. 2020).

"When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). "[T]o succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party. *Federated Mut. Ins. Co.*, 983 F.3d 307, 312-313 (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).

## **DISCUSSION**

Plaintiff attached copies of the Option Agreement and the Memorandum of Option Agreement to the Complaint. [DE 7; 7-1; 7-2]. When filing its Answer, Defendant attached the Termination and Release Agreement ("Release"), which was also entered into by the parties. [DE 9; 9-1]. The Option Agreement, Memorandum of Option Agreement, and the Release are fatal to Plaintiff's claims.

### I.    **Promissory Estoppel**

Promissory estoppel permits recovery where no contract in fact exists. *Ind. Bureau of Motor Vehicles v. Ash, Inc.,* 895 N.E.2d 359, 367 (Ind. Ct. App. 2008), *reh'g denied*. The elements of promissory estoppel are: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by

3

enforcement of the promise. *Hinkel v. Sataria Distrib. & Packaging, Inc.,* 920 N.E.2d 766, 771 (Ind. Ct. App. 2010) (citing *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001)).

Taking the "facts and inferences in the light most favorable to the non-moving party," Defendant promised to split the profits from a third-party sale with Plaintiff after the permit was modified and the landfill was constructed. [DE 7, Page 4]. Defendant encouraged Plaintiff to expend "capital, political capital and manpower" on the application and permit process. *Id*. Plaintiff, in reliance of Defendant's oral and written representations, moved forward with the application and permit process, only for Defendant to stop responding after Plaintiff was finalizing the permit. [DE 7, Page 5]. These facts may satisfy the first four elements of a claim for promissory estoppel, however, the agreements Plaintiff entered with Defendant are fatal to the claims.

First, the Option Agreement, signed by Plaintiff and Defendant alike, prevents Plaintiff from satisfying the final element of promissory estoppel. Plaintiff cannot satisfy the final element of promissory estoppel because Plaintiff admitted that Defendant "terminated the Option Agreement in compliance with its terms." [DE 14, Page 3:14]. If Defendant terminated the Option Agreement in compliance with its terms, then there must have been a contract with terms. If there was a contract, Plaintiff has no promissory estoppel claim. *See Ind. Bureau of Motor Vehicles v. Ash, Inc.,* 895 N.E.2d 359, 367 (Ind. Ct. App. 2008), *reh'g denied.*

Despite Plaintiff's own admission that there was a contract, Plaintiff attempts to argue that the promissory estoppel claim does not arise out of the Option Agreement, the Memorandum of Option Agreement, or the land negotiations. This argument also fails. Plaintiff attempts to recover costs and expenses incurred while investigating the landfill and preparing the permit application in pursuit of its option to make an offer on the property. [DE 7, Page 5]. Plaintiff's

4

promissory estoppel claim arose because negotiations with Defendant fell apart and Plaintiff was not able to exercise its option right under the Option Agreement and Memorandum of Option Agreement.

Additionally, the Release, again which Plaintiff and Defendant agreed to, expressly bars suits like the instant one that Plaintiff attempts to bring. The first part of Section (b) of the Release prevents Plaintiff from suing Defendant or any of its related entities, employees, or representatives.

> … discharges [Defendant] and all of its past and/or present predecessors, successors, parents, subsidiaries, joint ventures, related entities, affiliates and divisions as well as all of the former and current agents, officers, executives, directors, shareholders, managers, members, partners, employees, insurers, representatives, administrators, and attorneys of [Defendant] and the foregoing entities, and any person or entity acting by, through, under, or in concert with them or any of them or who may be jointly liable with any of them, and each of their heirs, executors, administrators, successors, and assigns…

[DE 9-1, Page 2]. Immediately following this, Section (b) continues and outlines the claims Plaintiff is barred from bringing against Defendant.

> …of and from any and all actions, causes of action, complaints, claims, counterclaims, promises, agreements, contracts, controversies, suits, rights, demands, or other legal or administrative proceedings of any nature whatsoever, whether arising from contract, tort (including [Defendant's] negligence), or otherwise, whether known or unknown, accrued or not

> accrued, real or imagined, contingent or non-contingent, disclosed or undisclosed, asserted or unasserted, claimed or suspected, direct, incidental, or consequential, and/or in law or in equity (each, a "Claim") for any and all losses, damages, charges, liabilities, fines, fees, verdicts, judgments, deficiencies, obligations, liens, debts, costs, and expenses of any nature whatsoever (including attorney's fees and defense, investigation, discovery, court, and other costs and expenses) (each, a "Loss")…

*Id.* Finally, the last part of Section (b) addresses the time-constraints of the Release.

> … which [Plaintiff] individually or in any representative capacity, now has, ever had, or may ever have against [Defendant] that may have arisen from the beginning of time until the date of this Agreement or may arise at any time hereafter, in any and all events, arising out of or relating to the Option, the Option Agreement, the Memorandum, or any other claim to any right, title, or interest in any portion of [Defendant's Real Estate].

*Id.* Plaintiff further argues that because the events at issue occurred after the Release, the Release cannot bar those claims. This argument fails. The plain language above contemplates and includes events occurring after the Release was signed. Even if the Release did not bar Plaintiff's claims, which it does, the Plaintiff cannot meet the final element of a promissory estoppel claim, because Plaintiff admitted there was in-fact a contract. As a result, Plaintiff's promissory estoppel claim fails.

## II.    Unjust Enrichment

Plaintiff argues that having a complete permit application is a measurable benefit, because Defendant would not need to complete one on its own. [DE 7, Page 6]. Plaintiff also

asserts that having the knowledge lDEM would approve a large-scale landfill is a measurable benefit because Defendant would not have to undertake the extensive application process with an unknown result. *Id.* Plaintiff undertook these endeavors with the expectation that Defendant would complete the sale. *Id.* Plaintiff argues that allowing Defendant to enjoy the benefit of knowing that lDEM would approve modification of its existing permit for the operation of landfill, and for having a complete modification application, without compensating Plaintiff for the expended effort, would be unjust.

Plaintiff's unjust enrichment claim fails for two reasons. Where "the existence of a contract between the parties is undisputed, an unjust enrichment claim will seldom survive a motion to dismiss." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024) (quoting *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022)). This is because "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (quoting *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004)). Further, "a party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024) (quoting *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022)). "[T]his pleading error prevents [any] unjust enrichment claim from going forward." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024) (quoting *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022)).

Here, Plaintiff's unjust enrichment claim explicitly references the existence of more than one contract governing the events at issue. In the complaint, Plaintiff's unjust enrichment claim begins by re-alleging and incorporating by reference paragraphs 1-30. [DE 7, Page 5:31]. The

7

Option Agreement and Memorandum of Option Agreement are referenced in paragraphs 6, 7, and 17. [DE 7, Page 2-3]. As a result, Plaintiff's unjust enrichment claim fails.

Second, "[i]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016); *see Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, the conduct at issue in the unjust enrichment claim is the same conduct at issue in the promissory estoppel claim, and Plaintiff's promissory estoppel claim failed. For this reason, Plaintiff's unjust enrichment claim also fails.

### III.     Unenforceability Due to Public Policy

Plaintiff argues that even if the events at issue are covered by the Release, the Release is invalid because it is "against public policy and should not be enforced." [DE 22, Page 7]. The Indiana Supreme Court has found that the freedom to set contract terms is especially important in the context of a commercial transactions, and that sophisticated commercial actors should be free to allocate risks as they see fit. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning*, 746 N.E.2d 941, 950-951 (Ind. S. Ct. 2001). Courts should not interfere simply because such risks materialize. *Id.*

"A contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms." *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 777 (Ind. Ct. App. 2011) (citing *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004), *trans. dismissed*). Indiana unconscionability jurisprudence is sub-divided into two branches: substantive and procedural. *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App.

2001) (citing *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 951 (Ind. Ct. App. 1982)), *trans. denied.* Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract. *Missler v. State Farm Ins. Co.,* 41 N.E.3d 297, 303 (Ind. Ct. App. 2015) (citing *DiMizio v. Romo*, 756 N.E.2d 1018, 1023-24 (Ind. Ct. App. 2001)).

  Plaintiffs make no allegations regarding the process of negotiations, and instead seem to take issue with the language of the Release itself. [DE 22, Page 8]. As such, this Court will analyze Plaintiff's claim under the theory of substantive unconscionability. Here, a review of the pleadings and exhibits failed to uncover facts sufficient to support a finding of substantive unconscionability. As an initial matter, Plaintiff alleges that Defendant was in the "driver seat" and drafted all the contractual language. *Id.* The phrasing in both the Option Agreement and Release state otherwise.

> The Parties have participated jointly in the drafting and negotiation hereof. In the event an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions hereof or thereof.

[DE 7-2, Page 4; DE 9-1, Page 4]. Plaintiff was formed as an LLC for the explicit purpose of contracting with Defendant for an option to purchase the land. [DE 7, Page 2]. After negotiating with Defendant, Plaintiff received that option. [DE 7-1; 7-2]. Plaintiff provides no evidence nor points this Court to any specific provision that is substantively unconscionable. To the contrary, the contract includes language indicating that Plaintiff "participated jointly" with Defendant in

9

negotiations. This Court finds no reason the Release is substantively unconscionable and Plaintiff's claim that it should be unenforceable due to public policy fails.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings [DE 15] is GRANTED. The Court recognizes that there are outstanding counterclaims asserted by Defendant against Plaintiff. [DE 9]. Defendant has 45 days from the entry of this order to notify the Court whether Defendant intends to proceed on the counterclaims. If no submission is filed by Defendant, the Court will dismiss the counterclaims under Rule 41(b).

SO ORDERED.

ENTERED: July 30, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court